Peck, J.,
dissenting.
It is now insisted that the dcree in this case is errone•ous, and should be reversed. First, Because upon the very face of the agreement there is no' such description of estate as that a bill for a specific execution of the contract will he entertained, and because the value of the estate' pursued is greatly disproportioned to ;the ten dollars paid,' and the ninety dollars agreed to he paid. Second, The demand in the hill for lands therein specified, and •which is the subject matter put in issue by answers and replications, and to which the testimony is, or in fact could he, directed, has been wholly abandoned in the dcree made, •and other lands substituted in their stead, not in issue {the hill having no double aspect) and concerning which the defendants have never been heard, either in their answers or by proof. Third, The dcree for these lands is a surprise on the defendants, as to the estate decreed, and touching which they were not let in to plead, or from any thing, either as to their value, or not answering the description in the agreement. Fourth, The complainant is found guilty of champerty and maintainance. And fifth, Has misdemeaned himseli, under the decree, by holding the same in terrorem, until thereby he extorted large sums of money by agreeing not to select certain lands.
What is the law upon these several points of objection? Before we enter on the consideration of the first point, it is proper to remark, that at the time of filing the bill, the contract had not been executed on either side. The bill was filed on the 3rd of March, 1814, three years after the contract had been entered into. Ten dollars only had been paid, but it does not appear that any *200 part of the remaining ninety dollars had been paid or tendered. The ten dollars, compared with the value of the land demanded, was only nominal. As the payment was t0 he f°U1’ years, and as the assignee came with his bill at the end of three, should he not have first done equity to him of whom he demanded it, by paying, or at least tendering all the money. The case shows that the land was burdened with the taxes. Nicholson, pressed for the want of funds, and before payment of any part of the ninety dollars, is burdened with a bill in equity. Again, was Nicholson obliged to part with his title until payment was made? No time is given for making conveyance under the agreement. Equity gives a lien on the land for the money, and if Mitchell would hasten it, in performance on his part, within four years, he should have tendered the whole of the money, and before tender, the bill was filed prematurely. 1 Des. Rep. 161, 162.
As to the first point made, the uncertainty of the thing sought to be decreed. It is uncertian in description and uncertain in value. From the very nature of the contract, the value was uncertain, for if Nicholson sold all his good land in oné month, the value would be diminished, if he sold none, the estate would be of a value that it would be against conscience to decree specific performance.
The rules are, that a contract to authorize a specific performance to be decreed, should be fair, just, certain, equal in all its parts, and for adequate consideration; and if any of these are wanting, the decree will be withheld. 1 Des. R. 257: Newland, 151, 152: Fonblan. Eq. 125.
And upon this branch of the case; confining myself ■alone to the consideration, I will not depart from the selection set up in the bill. First, there are eleven tracts selected and demanded. This is beyond the agreement. Supposing this, a small matter, which the court could correct in the decree, what is the value of the estates for which the decree is sought? From two to five dollars per *201 acre is stating it under the proof, making in value, in the language of Nicholson’s answer, many thousand dollars of property for the advance of ten dollars, with ninety dollars more in expectancy
This proof at once defeated the possibility of a specific execution of the contract. No chancellor ever did decree in such a case, as that made out by the bill, answer, replication and proof; and in this case, on the issues and proof it was properly denied. And this -brings us to the consideration of what was subsequently done'"in the casé. Thé'.-Selection is abandoned, and the chancellor orders a new selection. This is the second objection. It has been enquired, if there is found any precedent for such a course? It is not the thing asked by complainant, it is not the matter contested by the respondents, nor is it that-about which testimony could be taken. I ask if, touching this last selection, it was possible for the defendants to be heard? there was nothing touching it in the pleadings, and the time for taking testimony was closed. The chancellor makes a new case, not within, the contemplation of the parties. He travels away from the difficulties, the proof had thrown, as a stumbling block to the plaintiff. The agreement of probata et allegata is just as necessary in chancery as at law;, and the chancellor should guard the parties against surprise; but here the surprise is created by the novelty of the substitution of another thing for that demanded; and, in effect, the, evidence is stricken away, and the defendant’s mouth closed. But it is said, that on exceptions taken to the report, testimony would have been allowed to show the value. This is, supposing the value the only matter that could be contested, which is not the fact. When a new selection was to be made, the defendants had a right to be heard, de novo, on all the matters of equity touching the lands so selected,- as had been pursued in the first- instance, upon the selection which was the gravamen of the bill. It is *202 arbitarly out of time, and in a condition not to be an-J ' swered.
These, however, are only parts of the objections; the main one is, that it proves that a precedent condition, which should have been perfomed by the plaintiff before filing the bill, never has been performed. The selection is part of the agreement, being wholly rejected for causes shown by die chancellor, it must have been in his view as no selection, and as the plaintiff could not expect to succeed without it, when rejected and treated as a nullity, the case was at an end. Newland, 249. It is true, a reason is given in argument for the change of the selection, that the sale for the taxes had encumbered the estate first selected. ' But it is a full answer to this, that Johnson, by his answer, resists the claim on other grounds, particularly the great value of the property, and agrees to place himself in the condition of Nicholson. Therefore, it comes to this, that if the complainant will insist on his first premises assumed, will the court, overruling him in that, provide another means, not asked or thought of? There is no example for it, and this of itself makes the decree erroneous.
■ The third objection has been included in the last head of my opinion, to wit, surprise upon the parties. Still it is proper here to remark, that the report of the commissioners, grounded on the decree, is upon its face objectionable. The plats returned, their form, and run so as to 'include in one survey more than one improvement; is error so apparent, it will not be overlooked ? And this very matter of objection is stated by way of exception to the report. One survey seven times as long as wide, at least, three from four to five times as long as wide, and all of them shapeless and in illegal form. These are unreasonable and iniquitous exactions, which a court of equity will not sanction or permit. If Mitchell had produced his surveys in filing his bill, as designating the land selected, and Nicholson had defended on that ground alone, the *203 complainant could not have, for that reason alone, sue- , : , . . , , , ceeded. lhe objection here does not come too late, for the report is part of the decree, and certainly subject to be examined.
Before I notice the remaining objections, I will examine the question, whether the evidence can be looked to. It is said on a writ of error in equity, the pleadings and the decree alope can be examined. In this case the decree does not purport to set out the evidence or any part of it. The record brings up all the evidence, but if the position assumed be the true one, then it is a useless appendage to'the record, an expense the plaintiff in error is compelled to incur in making out, and which when made out, and transmitted, is a useless < incumbrance. If there is any rule to exclude it, I, for one, regret its existence. We are bound by the act of assembly to give such judgment as the court below ought to have given. How can we give that judgment, or decree without examining the case as the judge or chancellor examined it? It is impossible. Again, as a general rule, the whole record is open on a writ of error, and judgment and decrees are to be given according to the right of the case, without regard to form or technicality. These remarks and authorities prove, that either the evidence must be examined, or the decree is, on its face, erroneous, for not setting it out... If this position is not correct, theñ the chancellor has a power which, for one, I am unwilling to accord to any man. He can simply say, the plaintiff is entitled to relief, or not entitled to relief, give no reason for it, state no fact to ground the opinion upon, make a sealed book of the evidence, and laugh at the effect of a writ of error. The less he does the safer is his decree from scrutiny. The more palpable the error upon the whole case, the more helpless will be the plaintiff in error, when left without the evidence which ought to save him. It is taken away by a mere rule of the court, and that against the spirit and letter of two acts of assembly. *204 Writs oerror and appeals in equity should be on the same footing. The act intended them to be so: But we are told, there must be bills of exceptions, and those ceremonies used when the evidence is ore terms, when it is clear there is a most striking difference. In equity, all the evidence must be in writing, taken and returned according to prescribed forms, and if unexcepted to, is, as a matter of course, as much evidence in the cause, and part of it on a writ of error, as the bill or answer. Act 1819, ch. 72, sec. 1.
We frequently hear it said, that an appeal to the supreme court is as a bill of review. On an appeal the whole record is open, that is not questioned. Why shall not a writ of error be considered in the nature of a bill of review also, and'open the whole record? The reason is just as strong in the one form of bringing it up, as in the other; and certainly the authority is not less strong, for every thing advanced against it is viere dicta, which dicta as already shown, is against statutory provision. I am, therefore, decidedly of opinion, that the whole case, as it was heard before the chancellor, is open before this court. It is fashionable on these occasions to conduct us to the House of Lords, and get lights by which to correct our practice. This is travelling far from home for but little light, and I fear, far away from justice. The timid chancellor, who is always adjusting his reasonings by such charts, reminds me of the mariners who accompanied the discoverer of the new world; they were for returning as soon as the veering of the needle was discovered; but a master spirit relied upon a philosophy unerring in the main, and following all the lights within his grasp, crowned his enterprise with success. Could we be brought to consider ourselves building up systems of our own, and un-trammelled, walking in broad light, shed by our practice and statutes, for the discovery of truth and attainment of justice, we would sweep away mists and shadows, only calculated to bewilder, and look at the whole that we *205 might the better see the beariag of the parts. In the supreme court of the United States, cases are reviewed on writs of error as here contended for. The following acts, taken in connexion, are conclusive with me to show that I am right. 1801, ch. 6: 1822, ch. 13, sec. 4: 1809, ch. 49, sec. 26, 27: 1811, ch. 72, sec. 11; and rules of the courts made under the act of 1829, ch. 103, sec. 1: act 1822, ch. 14, sec. 7.
The remaining points of objection in the cause, it is needless to notice further than to say, they are sustained by the proof, which, in my opinion can be noticed on this writ-of error; and the last one, presents the strongest conceivable argument why the decree, originally made, is erroneous. The very terms of the decree enabled Mitchell to-,exact more than compensation from’individuals, over whom the decree was held in terrorem, ánd to have the land he might select besides. Either he has misdemean-ed "himself so as to deserve dismissal from the court, or the- decree giving the extraordinary advantage is for that cause erroneous, and should be reversed.
•It is proper the cause should be disposed of. If sent hack, with liberty to he re-examined by a petition on the whole case, I should have no objection; but if the infant heir of Nicholson cannot have this privilege, and cannot be heard in that court, as to the whole matter touching selections now to be made, as well as those heretofore made, and that collaterally, being still tied up by the first decree, I should be unwilling to place her in that predicament.
"Decree reversed.